TARA K. MCGRATH
United States Attorney
STEPHEN H. WONG
CA Bar No. 212485
ALICIA P. WILLIAMS
CA Bar No. 262823
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9464/8917
Email: stephen.wong@usdoj.gov/alicia.williams@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN MADRIGAL-BIRRUETA,<br><br>Defendant. | Case No. 23-cr-1684-RBM<br><br>**UNITED STATES' MOTION TO COMPEL DEFENSE TO STATE GROUNDS FOR RETAINING VICTIM REMAINS OR ORDER THEIR RELEASE**<br><br>Date:   February 23, 2024<br>Time:   9:00 a.m.<br><br>The Honorable Ruth Bermudez Montenegro |

The United States of America, by and through its counsel, Tara K. McGrath, United States Attorney, and Stephen H. Wong and Alicia P. Williams, Assistant United States Attorneys, hereby move the Court to issue an order releasing the human remains of two victims in this case, one of whom carried a 26-week old fetus, or in the alternative set a schedule for such release.

## I
## STATEMENT OF THE CASE

On August 18, 2023, the Grand Jury returned an Indictment charging Defendant with engaging in a continuing criminal enterprise (21 U.S.C. §§ 848(a), 841(a)(1), and 846); conspiring to distribute methamphetamine, fentanyl, and cocaine ( 21 U.S.C. §§ 841(a)(1), 846); Conspiracy to Import Methamphetamine and Cocaine (21 U.S.C. §§

852, 960, 963); and 846); Possession of a Firearm in Furtherance of a Drug Trafficking Crime (18 U.S.C. § 924(c); Conspiracy to Launder Money (18 U.S.C. § 1956(h), and criminal forfeiture. [ECF No. 1.]

The United States has further informed the defense that Defendant is the target of an investigation involving the murder of two people, in violation United States laws criminalizing murder in relation to a drug trafficking conspiracy (21 U.S.C. §§ 848(e)); murder in further of witness tampering (18 U.S.C. §§ 1512(a)) & 1111; conspiracy to do the same (18 U.S.C. § 1512(k) & 1111); and killing an in utero child in the course of certain federal crimes (18 U.S.C. §§ 1841 & 1111).

Since August of 2023 the United States has produced several rounds of discovery to the defense, including discovery related to the discovery, exhumation, and forensic examination of two sets of human remains and one set of fetal remains belonging to the victims of the alleged murders that are the subject of the ongoing investigation.

II

**STATEMENT OF FACTS**[1]

**A.   An investigation into drugs being smuggled across the border from Mexico leads agents to interview two individuals in Yakima, Washington.**

In the summer of 2021, Special Agents with Homeland Security Investigations began investigating a drug trafficking organization (DTO) that was importing methamphetamine, fentanyl, and cocaine into the United States from Mexico through San Diego area ports of entry.

By August of 2022, the investigation led agents to a group of individuals operating out of Yakima Washington. Specifically, agents learned that two individuals, Cesar Murillo and Maira Hernandez had wired money to individuals working with the DTO and had and registered vehicles in their name that were being used by the DTO. Agents interviewed Murillo and Hernandez on August 23 and 24, 2022.

---

[1] This is a brief recitation of the facts for the purposes of this motion.

Agents returned to Murillo's and Hernandez's residence with a search warrant issued by the U.S. District Court, Eastern District of Washington, on September 8, 2022. Agents searched both a residence in the town of Yakima, WA, and a ranch approximately ten miles outside of town located in a rugged and remote high-desert location. Agents seized multiple firearms, small amounts of drugs, and drug trafficking paraphernalia, such as packaging, scales, and a money counter. However, Murillo and Hernandez were not at the scene.

**B.     The United States learns that Murillo and Hernandez were murdered during the investigation.**

In December 2022, the United States learned that Murillo and Hernandez had been murdered shortly after they spoke with agents and buried near the ranch outside of Yakima, WA. Agents searched for their remains from January 2023 through September 2023.

On April 4, 2023, after receiving his Miranda warnings, defendant told agents that he shot Murillo (in self-defense), that he later drove Hernandez to the ranch, and that soon after Hernandez got out of his car another person shot her multiple times. Defendant said he buried their remains at the ranch.

**C.     Agents discover the clandestine burial sites, recover Murillo's and Hernandez's remains, conduct forensic testing of the remains, and produce reports of such tests to the defense.**

Agents discovered the clandestine burial sites on September 13, 2023. The remains were exhumed on September 13 and 14, 2023 by a forensic evidence team with Washington State Police. Between October 2023 and December 2023, two different Forensic Pathologist Medical Doctors and a Forensic Anthropologist examined the remains.

Both pathologists opined that the victims died from gunshot wounds to the head. The second of the two pathologists, Dr. Eric Kiesel, opined that Murillo sustained multiple shots to the chest and two shots to the head. Dr. Kiesel also opined that

3

Hernandez sustained two shots to the head, and had one bullet lodged in her lung. A forensic anthropologist examined the fetal remains and opined that Hernandez was approximately 26-weeks pregnant at the time she died. Those fetal remains were found in her leggings, having apparently been expelled from her womb by the tons of dirt covering her.

All the pathology reports, along with all other evidence related to the exhumation and examination of the remains, were produced to the defense in December 2023. In addition, the United States arranged for defense counsel to speak with Dr. Kiesel over the phone.

**A.    The United States is unable to procure the defense's agreement to release the remains.**

On several occasions, the victims' families' have expressed to the United States a compelling desire to have their loved-ones' remains returned to them so that they can conduct proper burial services, in accordance with their faith and traditions.

Consistent with those requests, on December 20, 2023, the United States notified the defense that it wished to release the remains to their families and sought counsel's position, and requested that the defense either agree to release the remains or make arrangements to promptly conduct any examination the defense deemed necessary, so that the remains could then be returned to their family.

As of this date, the defense has neither agreed to release the remains nor arranged its own examination, and Murillo's and Hernandez's remains are still in cold storage in the Yakima County Coroner's office. The United States has made multiple attempts to confer with the defense over this issue but has been unable to obtain neither the defense's agreement to such release nor a commitment to a schedule by which the defense will conduct its own examination.

//
//
//

# III

# MEMORANDUM OF POINTS AND AUTHORITIES

**A.     The United States may release evidence after the apparent exculpatory value of the evidence has been exhausted.**

Because the defense has not agreed to release the remains, nor procured its own expert to examine the remains, the United States is presented with the choice of either preserving the remains indefinitely, denying the victim's families their desire to bury their loved ones, or unilaterally releasing the remains, at the risk of the defense later asserting that the Government improperly spoiled the evidence.

"Under the Due Process Clause, criminal prosecutions must comport with prevailing notions of fundamental fairness" to include taking reasonable steps to preserve all relevant evidence. *United States v. Lopez-Rocha*, 322 F. Supp. 3d 1040, 1045 (S.D. Cal. 2018) (quoting *California v. Trombetta,* 467 U.S. 479, 485 (1984)). However, the "fundamental fairness" requirement of the Due Process Clause does not "'impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.'" *Id*. (quoting *Youngblood*, 488 U.S. at 58 (internal citation omitted)). "[T]he government violates the defendant's right to due process if the unavailable evidence possessed exculpatory value that was apparent before the evidence was destroyed, and [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Lopez-Rocha*, 322 F. Supp. 3d at 1045 (quoting *United States v. Cooper*, 983 F.2d 928, 931 (9th Cir. 1993) (internal citation omitted))(emphasis added). "'[U]nless a criminal defendant can show bad faith on the part of the [Government], failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *Id*. (quoting *Youngblood*, 488 U.S. at 58).

Here, it is difficult to conceive how further retention of these human remains can serve any legitimate purpose. No reasonable medical professional will dispute that

these were homicides, with the cause of death being multiple gunshot wounds to the head.

The Government therefore asks the Court to intervene at this time and issue an order either releasing the remains, or setting a schedule by which the defense must conduct an examination, after which the remains must be released. The families should not have to wait indefinitely for their return.

**B.     The Court should hold a hearing, and then order the release of the remains or set a schedule by which the release will occur.**

The United States requests that the Court hold a hearing during which the defense should state what evidentiary purpose is served by continuing to hold Murillo's and Hernandez's remains. The United States will agree that the defense may proceed *ex parte*, if the defense so desires, so as not to reveal its strategy. If the Court is satisfied with the defense's proffer, it should set a schedule by which the defense must conduct its examination and then release the remains. If not, the Court should order their immediate release.

## VI
## CONCLUSION

For the foregoing reasons, the United States requests that the Court grant its motion and order the immediate release of Murillo's and Hernandez's remains, or set a schedule by which such release can occur.

DATED: January 31, 2024                    Respectfully submitted,

                                           TARA K. MCGRATH
                                           United States Attorney

                                           */s/ Stephen H. Wong*
                                           STEPHEN H. WONG
                                           ALICIA P. WILLIAMS
                                           Assistant United States Attorneys